
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   APR 12 200_   ★
P.M.
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SAMUEL COLON,

                         Petitioner,

      against -

UNITED STATES of AMERICA,

                         Respondent.
-----------------------------------------------------------X

03 CV 5115 (SJ)

**MEMORANDUM & ORDER**

APPEARANCES

SAMUEL COLON
#48854-053
FCI Petersburg
P.O. Box 90043
Petersburg, Virginia 23804
Petitioner, *Pro Se*

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
One Pierrepont Plaza
Brooklyn, New York 11201
By:    Susan Corkery, Esq.
Attorney for Respondent

JOHNSON, Senior District Judge:

    Before the Court is a motion by Samuel Colon ("Petitioner"), acting *pro se*, to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion is DENIED.

1

P-049

## BACKGROUND

Petitioner seeks to challenge a judgment, which followed a plea of guilty, convicting Petitioner of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841 and 846, and distribution of heroin, in violation of 21 U.S.C. § 841. On October 29, 1999, this Court entered judgment sentencing Petitioner principally to 324 months on the conspiracy count and 240 months on the distribution count, with the sentences to run concurrently.[1]

On his initial direct appeal, Petitioner's judgment was affirmed, in part, and vacated and remanded, in part, by the United States Court of Appeals for the Second Circuit (the "Second Circuit"). United States v. Colon, No. 99 1653, 2000 WL 637079 (2d Cir. May 17, 2000). After holding a hearing on June 12, 2000 to resolve the sole issue on remand, the Court re-entered judgment on June 21, 2000, re-sentencing Petitioner principally to 324 months. The Second Circuit affirmed his subsequent appeal on April 24, 2002. United States v. Colon, 38 F. App'x. 363 (2d Cir. 2002). Certiorari was denied on October 7, 2002. Colon v. United States, 537 U.S. 919 (2002).

Petitioner then filed this motion, dated October 1, 2003, claiming: (1) his plea

---

[1] The Court sentenced Petitioner after a hearing was held on May 14, 1999 to resolve certain factual issues, including the drug quantity attributable to Petitioner, whether he was in possession of any firearms during the commission of the offenses to which he pleaded guilty, and Petitioner's level of participation in the venture. The Court heard testimony on these issues from a cooperating witness, Robert Brent ("Brent"), who was charged in the same indictment.

2

of guilty was invalid; (2) the government violated the terms of a proffer agreement entered into between Petitioner and the government; and (3) ineffective assistance of counsel by his trial counsel, Mildred M. Whalen, Esq. ("Trial Counsel"), of the Legal Aid Society of New York, for failure to address these two issues with the Court. On July 14, 2004, Petitioner filed a motion to amend his petition, requesting the Court consider the impact of Blakely v. Washington, 542 U.S. 296 (2004), on his case. In an order dated July 29, 2004, the Court, while reserving judgment as to whether Blakely could be applied retroactively to Petitioner's case, granted the motion to amend. See Docket No. 03 CV 5115, Entry No. 10.

## DISCUSSION

### I. The Guilty Plea

Petitioner first challenges the integrity of his plea of guilty. He argues that he did not enter the plea knowingly and intelligently because, while he allocuted to knowing Brent, Petitioner allocuted that he did not know the other charged co-conspirator, Carmello Idelfonso ("Idelfonso"). Thus, according to Petitioner, his failure to allocute to knowing each of the co-conspirators alleged in the indictment rendered the plea to the conspiracy charged in Count One factually insufficient.

Petitioner cites to Montgomery v. United States, 853 F.2d 83 (2d Cir. 1988), for apparent support for his argument. His reliance, however, is misplaced. In Montgomery, that petitioner was also collaterally challenging his plea of guilty to a

3

narcotics conspiracy. Montgomery also raised the same argument that Petitioner raises here, namely, that the failure to admit to conspiring with the individual named in the indictment rendered the guilty plea infirm.

While the Second Circuit agreed with Montgomery that his guilty plea was factually insufficient to constitute conspiracy, the divergence of facts between the cases is material. In <u>Montgomery</u>, the indictment named only one other alleged co-conspirator – a person with whom Montgomery insisted during his plea allocution that he did not conspire. <u>Id.</u> at 85. It was clear from the district court record that, while Montgomery believed someone else would be involved in his drug sales, he did not have any specific person in mind. <u>Id.</u> at 84-86. Rather, he said, he knew a bar that he apparently could go to and set up shop to sell his drugs. <u>Id.</u> It was the potential buyers at the bar – not another individual known to him who was already a part of the venture – to whom he was referring when he allocuted. <u>Id.</u> The Second Circuit found Montgomery's conjecture as to whom he would be selling drugs insufficient to constitute conspiracy. <u>Id.</u> at 85-86.

Here, even though Petitioner did not allocute to conspiring with Idelfonso, he did allocute to conspiring with Brent. His admission regarding his dealings with Brent alone were factually sufficient to constitute conspiracy, even if the scope of the conspiracy he pleaded to was narrower, in terms of participants, than the one charged in the indictment. <u>See, e.g.</u>, <u>United States v. Miller</u>, 471 U.S. 130, 145 (1985) (upholding conviction when evidence elicited at trial proved a criminal venture

4

narrower than the one charged in the indictment); United States v. Mucciante, 21 F.3d 1228, 1236 (2d Cir. 1994) (rejecting argument that is was constitutionally impermissible for jury to find defendant defrauded only one of the three victims named in the indictment). Thus, the law is clear that Petitioner's allocution to the conspiracy count was not factually insufficient.

## II.   The Guideline Range and Petitioner's Proffer Statements

Petitioner next claims that the Federal Sentencing Guidelines (the "Guidelines") range the Court used to sentence Petitioner was determined, in part, by the impermissible use of a statement Petitioner made during his unsuccessful attempt to proffer with the government.[2] To support his argument, he submitted to the Court for comparison purposes a copy of the FD-302 report (the "302") prepared by the federal agent who attended Petitioner's proffer session, as well a copy of a portion of the Pre-Sentence Report ("PSR") for this case prepared by the United States Department of Probation ("Probation"). See Pet. Mot. to Vacate, Set Aside or Correct Sent., Ex 5 at 1, 2. It is Petitioner's view that the similarity between these two documents as to his drug activity can only be attributed to the government impermissibly sharing his proffer statements with Probation.

---

[2]Petitioner's proffer agreement with the government states, in relevant part, that proffered statements "will not be used to determine . . . the Defendant's Sentencing guideline range." See Pet. Mot. to Vacate, Set Aside or Correct Sent., Ex 3.

5

The Court sees no need to compare the 302 and the PSR to determine if Probation relied on Petitioner's proffer statements to determine the Guidelines range it recommended to the Court. This is because the PSR explicitly states that Probation did, in fact, consider Petitioner's proffer statements in determining its recommended Guidelines range. See PSR, 97 CR 986-01, Sept. 25, 1998, at 9-10.

However, regardless of what Probation may have done with regard to Petitioner's proffer statements – and how Probation may have obtained those statements – no violation of the proffer agreement occurred because the Court did not rely on the proffer statements to determine Petitioner's range. Rather, the Court relied on the testimony Brent provided in the May 14, 1999 hearing. During that hearing, Brent provided credible testimony that Petitioner was responsible for at least 1.5 kilograms of crack – an amount that far exceeded the level necessary to reach the base offense level of 38 the Court attributed to Petitioner. See Sent. Hr'g Tr. 16-18, May 14, 1999.[3] Notably, the Court's drug quantity findings were affirmed by the Second

---

[3] Petitioner points out that during sentencing the Court credited Brent's testimony and attributed only 612 grams of crack to Petitioner, meaning he should have qualified only for a base offense level of 36. Petitioner's argument fails to recognize that the Court was required, for the purpose of determining if the statutory mandatory minimum applied to Count One, to consider only the period of time charged in the indictment for that count, namely, July 23, 1997 through September 11, 1997. Thus, the Court's calculation of drug quantity for mandatory minimum purposes alone was limited to the transactions to which Brent testified that occurred between those charged dates. For the purpose of determining the overall sentence, the Court was, of course, free to consider all relevant conduct, which included all drug transactions that Brent testified were part of the conspiracy (and which were reasonably foreseeable by Petitioner), regardless of whether the dates of the transactions fell within the time periods charged in the indictment. See U.S. Sentencing Guidelines Manual § 1B1.3 (2005). As mentioned, that amount of crack clearly exceeded the 1.5 kilograms necessary for a base offense level of 38.

6

P-049

Moreover, during Petitioner's sentencing, the Court specifically stated on the record that the Court would not take into consideration for sentencing purposes the proffer agreement, despite the government's request the Court do so. See Sent. Hr'g Tr. 3, Oct. 22, 1999. It is thus clear that the Court relied not on Petitioner's proffer statements to determine his Guidelines range, but rather on Brent's testimony, meaning the proffer agreement was not violated.

### III. Ineffective Assistance of Counsel

Petitioner next asserts Trial Counsel was ineffective for failing to raise an issue in this Court with both Petitioner's plea of guilty as well as the supposed use of his proffer statements at sentencing.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court established a two-part test to determine whether a counsel's assistance was ineffective. First, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." <u>Id.</u> at 688. When evaluating counsel's performance, a court must examine the circumstances of counsel's conduct from counsel's perspective at the time rather than from hindsight. <u>Id.</u> at 689. Moreover, in order to satisfy the first prong of <u>Strickland</u>, Petitioner must overcome the strong presumption that the challenged action or inaction may be considered reasonable strategy. <u>Id.</u>

Second, a petitioner must show that counsel's performance prejudiced his

7

defense. Id. at 692. To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694. As the Supreme Court stated, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Unless Petitioner satisfies both of the requirements of Strickland, it cannot be said that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

As stated, the Court has found Petitioner's plea allocution was entirely adequate. Moreover, the Court did not use Petitioner's proffer statements to determine his Guidelines range. Thus, Trial Counsel did not provide ineffective assistance to Petitioner for failure to press the Court on these two issues in the manner set forth by Petitioner.

## IV. Request for Relief Under Blakely

Finally, in his motion to amend, Petitioner claims he is entitled to retroactive relief under Blakely v. Washington, 542 U.S. 296 (2004), a case in which the Supreme Court struck down the Washington state sentencing guidelines for being in violation of the right to a jury trial as guaranteed under the Sixth Amendment. Id. at 305. Petitioner contends his Sixth Amendment rights were violated by this Court's sentencing findings regarding the drug quantity attributable to Petitioner, his possession of two firearms as part of the conduct that lead to his conviction, and his

8

possession of two firearms as part of the conduct that lead to his conviction, and his leadership role in the venture.

Petitioner relies on case law – decided subsequent to the date the judgment of his conviction became final – for the position that the sentencing findings this court made by a preponderance of the evidence were constitutionally defective and must have been either admitted by Petitioner or charged in an indictment and found by a jury beyond a reasonable doubt. The case he cites to, however, is of no help to him.

Blakely – or, for that matter, <u>United States v. Booker</u>, 543 U.S. 220 (2005), which extended the rationale of <u>Blakely</u> to the Guidelines and would thus be the more applicable case to Petitioner's case – is of no avail to Petitioner because the Second Circuit has made it clear that neither <u>Blakely</u> nor <u>Booker</u> may be applied retroactively to petitioners seeking habeas corpus relief for criminal cases that became final before the Supreme Court issued the two decisions. <u>Green v. United States</u>, 397 F.3d 101, 102-03 (2d Cir. 2005); <u>Guzman v. United States</u>, 404 F.3d 139, 144 (2d Cir. 2005) ("<u>Booker</u> is not retroactive, *i.e.*, it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that <u>Booker</u> was issued.").

<u>Blakely</u> was issued June 24, 2004, while <u>Booker</u> was issued, as noted in the parenthetical immediately above, on January 12, 2005. Petitioner's judgment of conviction became final when the Supreme Court denied certiorari on October 7, 2002, well before the opinions in <u>Blakely</u> and <u>Booker</u> were issued. Thus, Petitioner is not

9

considering the claims raised in Petitioner's motion to amend.

## V. Certificate of Appealability

The only remaining issue is the question of whether to grant a certificate of appealability. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. U.S., No. 04 CV 1111, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Petitioner has made no substantial showing of the denial of a constitutional right in this case.

## CONCLUSION

After reviewing the filings and the relevant portions of the record, which were entirely sufficient to dispose of this motion, the Court hereby DENIES both the motion and the issuance of a certificate of appealability. Morever, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is hereby DISMISSED with prejudice. The Clerk of the Court is directed to close the case.

P-049

SO ORDERED.

Dated: April 10, 2006
       Brooklyn, New York

                                      s/SJ
                                  Senior U.S.D.J.

P-049